IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

FILED          ENTERED
LODGED          RECEIVED

JUL 3 1 2012

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

|  |  |
|---|---|
| INTERNATIONAL ASSOCIATION OF HEAT & FROST INSULATORS & ALLIED WORKERS LOCAL NO. 24, Plaintiff, | * * * * * Civil Action No. 12-cv-1376-AW * * * |
| v. CHESAPEAKE FIRESTOP PRODUCTS INC., *et al.*, Defendants. | * * * * * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**Memorandum Opinion**</u>

Presently pending before the Court is Plaintiff's Motion for Default Judgment against Defendants Chesapeake Firestop Products, Inc. ("Chesapeake") and Clifford B. Smith ("Smith") pursuant to Federal Rule of Civil Procedure 55(b)(2). Doc. No. 13. Both Defendants were properly served and failed to plead or otherwise defend as directed in the Summons and as provided by the Federal Rules of Civil Procedure. The Clerk of the Court thereafter entered default against Defendants. *See* Doc. Nos. 11–12. The issues have been briefed and no hearing is necessary. As discussed below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Motion for Default Judgment, meaning that the Court will grant Plaintiff's motion in regard to Plaintiff's Labor Management Relations Act claim against Chesapeake and deny Plaintiff's motion in regard to its conversion claims against Chesapeake and Smith. As a result, judgment will be granted against Defendant Chesapeake and denied against Defendant Smith.

I.     **BACKGROUND**

Plaintiff International Association of Heat & Frost Insulators & Allied Workers Local No. 24 ("the Union") is a labor organization representing employees in Maryland, Virginia, West Virginia and the District of Columbia. Compl. ¶ 4. Defendant Chesapeake is a company incorporated in Maryland, and Defendant Smith is its President. *Id.* at ¶¶ 5–6.

During October 2009, Chesapeake and the Union entered into a Joint Trade Agreement ("Agreement"). *Id.* ¶ 7. This collective bargaining agreement establishes the terms and conditions for members of the Union employed by Chesapeake. *Id.* It is effective from October 1, 2009 through September 30, 2012. *Id.*

In the Agreement, Chesapeake agreed to withhold money for Union Dues, Labor-Management Cooperative Trust ("LMCT") Contributions and Political Action ("PAC") Fees from paychecks of unionized employees. Doc. No. 1 Ex. 1 at 25–26. Chesapeake was obligated to remit the withheld money to the Union by the fifteenth day following the month it was deducted from employees' paychecks. *Id.* at 27–28. The Complaint alleges that during the period of April 2011 through May 2012, Chesapeake withheld the money but did not remit it to the Union.[1]

The amounts owed to the Union are calculated according to the following formulas:

1. **Union Dues** are calculated at 3.5% of an employee's wages plus an additional deduction per hour worked as determined by the Union. Doc. No. 1 Ex. 1 at 25.
2. **LMCT Contributions** are calculated at $0.05 per hour worked or partial hour worked. *Id.* at 26.
3. **PAC Fees** are calculated at $0.04 per hour worked. *Id.*

The Agreement also provides that an 18% annual penalty will be levied against Chesapeake for late payments. *Id.* at 28.

---

[1]In its Motion for Default Judgment, the Union asserts that it should recover contributions to the National Apprentice Fund (NAF) which Chesapeake allegedly did not remit. However, the Union did not allege in its Complaint that Chesapeake failed to remit such contributions.

On May 4, 2012, the Union brought this action to enforce the Agreement pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Additionally, the Union seeks to hold both Chesapeake and its President, Smith, liable for conversion based on their failure to remit the Union Dues and contributions.

The Union moved for Entry of Default on June 4, 2012 after the Defendants failed to file a timely answer or responsive pleading. The Clerk entered default against both Defendants on June 28, 2012. *See* Doc. Nos. 11–12. Now, the Union seeks a default judgment in its favor against both Defendants, jointly, in an amount of $39,209.44, and against Chesapeake for an additional $3,416.43. The Union also seeks prejudgment and post-judgment interest and costs, to be supported by a subsequent filing of a Bill of Costs.

## II.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 55(b)(1), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on the merits," *Dow*, 232 F. Supp. 2d at 494 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F. Supp. 2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's

default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages … because the defendant could not reasonably have expected that his damages would exceed that amount. *In re Genesys Data Tech., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)).

While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F. Supp. 2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III.   ANALYSIS

### A.   LMRA Claim against Chesapeake

Federal labor law provides that "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any District Court of the United States." 29 U.S.C. § 185(a). The well-pled allegations in the Union's Complaint establish that Chesapeake was bound by the terms of the Agreement. Compl. ¶ 7; Doc. No. 13 Ex. 8 at 3. The Union alleges that between April 2011 and May 2012, Chesapeake breached the

Agreement by failing to remit Union Dues, PAC Fees and LMCT Contributions as required under the Agreement's terms. Compl. ¶¶ 8–13; Doc. No. 13 Ex. 8 at 5. The Union has provided the Court with a copy of the Agreement as well as affidavits by fund administrators familiar with the relevant records. Given the well-pleaded allegations before the Court, the Union has sufficiently shown Chesapeake's liability for breach of the Agreement with respect to the failure to remit Union Dues, PAC Fees and LMCT Contributions. The Union has not sufficiently alleged a failure to remit NAF fund contributions, however, since the Union did not bring such an allegation in its Complaint, introducing it for the first time its Motion for Default Judgment. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

      B.      <u>Conversion Claim against Chesapeake and Smith</u>

In Counts II and III of the Complaint, the Union states common law conversion claims against Defendant Chesapeake and Defendant Smith. "Section 301 of the LMRA expresses a federal policy, mandated by Congress, that federal law be applied in addressing disputes arising out of labor contracts." *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 937 (4th Cir. 1991) (citations omitted). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim is preempted by federal law." *Id.* "Thus, the question in preemption analysis is … whether resolution of the cause of action requires interpretation of a collective bargaining agreement." *McCormick v. AT & T Techs., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991).

In its preemption analysis, the Court looks first to the elements of the state law claim in order to determine whether an interpretation of the collective bargaining agreement is necessary to resolve that claim. *Shiflett v. I.T.O. Corp. of Baltimore*, No. 99-1379, 2000 WL 14214, at *4–5

(4th Cir. Jan. 10, 2000).  In Maryland, the tort of conversion is defined as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (citations omitted).   Resolution of a conversion claim thus requires an assessment of whether the Plaintiff has a right to the converted property.

Here, any right the Union has to the unremitted money is rooted in the Agreement.  The Agreement specifies how much money Chesapeake must withhold from its employees' paychecks and how and when that money must be remitted to the Union.  The Court must read and analyze the Agreement to determine the nature of the Union's property interest in the funds.  Accordingly, resolution of this claim would depend on an interpretation of the collective bargaining agreement.  The State conversion claim is therefore preempted by federal law.  Because Plaintiff has stated a claim against Defendant Smith for conversion only, Judgment against Defendant Smith will be denied.

C.    Damages

Based on the Complaint's well-pleaded allegations, the Court determines that Defendant Chesapeake has violated the LMRA and is entitled to all unpaid Union dues and PAC and LMCT contributions, subject to an 18% interest rate.  This includes the following amounts: $32,069.54 of Union Dues; $1,150.30 in PAC contributions, and $1,437.88 in LMCT contributions.  Doc. No. 13 Ex. 8 at 6.  Additionally, Chesapeake owes an 18% annual penalty for late payment of the funds pursuant to Article X, Part L of the Agreement. *See* Doc. No. 13 Ex. 5 at 27.  Therefore, Chesapeake will be ordered to pay the Union a total of $40,896.11, plus additional post-judgment interest, until paid.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Default Judgment will be **GRANTED** as to Chesapeake regarding Count I and **DENIED** as to Counts II and III.  Default Judgment will be **DENIED** as to Defendant Smith.  Judgment will be entered in Plaintiff's favor against Chesapeake in the total amount of $40,896.11 plus post-judgment interest, until paid.  A separate Order will follow.

|  |  |
|---|---|
| July 30, 2012 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |